**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Squire Motor Inns Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Fireman's Fund Insurance Company,<br><br>Defendant. | No. CV-21-08157-PCT-MTL<br><br>**ORDER** |

Plaintiff Squire Motor Inns Incorporated ("Squire") seeks to recover insurance coverage benefits for lost business income and other expenses arising from the COVID-19 pandemic. Fireman's Fund Insurance Company ("Fireman's Fund"), the defendant here, moves to dismiss the Amended Complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim. (Doc. 26.)

Squire alleges a claim for breach of contract and declaratory judgment arising from Fireman's Fund's denial of coverage. (Doc. 23.) It also alleges a claim for bad faith insurance practices relating to what it calls "ineffective purported reductions of coverage" in the renewed 2020-2021 policy. (*Id.*) Fireman's Fund argues that the Amended Complaint should be dismissed because (1) the Amended Complaint fails to allege actual physical loss or damage to the insured properties and (2) the insurance policy terms "expressly exclude from coverage any loss or damage caused by or resulting from a disease or virus". (Doc. 26 at 11, 23.) The motion will be granted.

///

**I.     BACKGROUND**

Squire operates a hotel with attached restaurants and a bar in Tusayan, Arizona, a town near the south entrance to the Grand Canyon National Park. (Doc. 23 ¶ 2.) Prior to the onset of the COVID-19 pandemic, Squire purchased an all-risk insurance policy written by Fireman's Fund that included business interruption and extra expense loss insurance. (*Id.* ¶¶ 4, 10, 13.) The policy also included "income support property" coverage for operational losses resulting from "direct physical loss" at the Grand Canyon. (*Id.* ¶¶ 14, 31.) As is relevant here, the policy coverage period was for 2019 to 2020. It was renewed for 2020 to 2021 with some changes that will be discussed below.[1]

The First Amended Complaint alleges that the COVID-19 virus caused "physical loss or damage" to its property in a manner similar to a "fire, windstorm, flood, or any other natural or man-made calamities (if not more so), and all such damaged property is equally incapable of producing revenues." (*Id.* 23 ¶ 67.) According to Squire, its financial losses attributed to COVID-19 constitute physical loss or damage to property and, as such, trigger policy coverage.

Around the beginning of April, as the COVID-19 pandemic began to take hold, the federal government ordered the closure of the Grand Canyon National Park. (*Id.* ¶¶ 54, 89.) Later, after the park reopened, the National Park Service imposed visitation restrictions that Squire alleges adversely impacted its business. (*See id.* ¶ 92.) Squire alleges that these orders and actions by civil authorities justifies policy coverage. It also alleges that the closure constitutes a "physical loss" for the purposes of its income support property coverage.

**II.    LEGAL STANDARD**

To survive a motion to dismiss, a complaint must contain "a short and plain

---

[1] The Amended Complaint asserts declaratory judgment and breach of contract claims arising from both policies. At oral argument, however, Squire's counsel clarified that those claims related to the 2020-2021 policy were pleaded "out of an abundance of caution." 3/8/22 Tr. 20:9. Counsel added that the later policy "simply doesn't apply to the claim that's presented here and we agree it doesn't apply. And those allegations in the complaint, the Court can ignore them for the purposes of this motion. The coverage is under the 2019-2020 policy . . . ." *Id.* at 20:14–18.

statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

The Court must accept material allegations in the Complaint as true and construe them in the light most favorable to Plaintiff. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Review of a Rule 12(b)(6) motion is "limited to the content of the complaint." *North Star Int'l*, 720 F.2d at 581. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### III. ANALYSIS

#### A. Actual Physical Damage

The interpretation of an insurance contract is a matter of law reserved for the court. *Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, 244 (App. 2011). Contract provisions free of ambiguity should be interpreted "according to their terms." *Fidelity Nat'l Title Ins. Co. v. Osborn III Partners LLC*, 250 Ariz. 615, 624 (App. 2021). "If a clause is ambiguous, we consider it in the context of the transaction as a whole and in light of legislative goals and social policy, and if an ambiguity remains thereafter, we generally construe the ambiguous term in favor of the insured." *Id*.

With some minor verbiage differences amongst them, the policy provisions at issue

here are all grounded in the concept of physical loss. The task before the Court here is to define whether physical loss requires some degree of physical damage or destruction of the subject property. This is no longer a novel question in the context of COVID-related insurance coverage, given the many decisions rendered by courts across the country since the pandemic began. As this Court recently observed in another COVID-coverage case,

> The phrase, "direct physical loss of or damage," is infamously undefined in insurance policies. There are hundreds of cases asking what this phrase means. And it is plain to see that out of these hundreds of cases, nearly every court comes to the same conclusion: it means the policies only cover actual physical damage to the property.

*Team 44 Restaurants LLC v. Am. Ins. Co.*, --- F. Supp. 3d ---, CV-21-00404-PHX-DJH, 2021 WL 4775106, at *2 (D. Ariz. Oct. 13, 2021); *accord B St. Grill & Bar LLC v. Cincinnati Ins. Co.*, 525 F. Supp. 3d 1008 (D. Ariz. 2021).

Similarly, in a case involving California law, the Ninth Circuit Court of Appeals held that insurance coverage for business income and extra expense loss required showing that the insured's property suffered from a "distinct, demonstrable, physical alteration" or that the insured was "permanently dispossessed of its property." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021) (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 115 Cal. Rptr. 3d 27, 37 (2010)). There, the at-issue coverage provision stated that the insurer would "pay for direct physical loss of or damage to [the insured's] Covered Property . . . caused by or resulting from a Covered Cause of Loss." *Id*. at 889.

These are just a few of the many cases populating judicial dockets across the country in which insurers ultimately prevailed on their decisions to deny coverage for COVID-related business losses. Because each count in Squire's complaint relies on coverage based on "direct physical loss or damage" to property and no such loss was alleged, the Court will dismiss Squire's complaint in its entirety. And in keeping with precedent, the Court similarly finds that each of the policy provisions at issue

unambiguously require some "actual physical damage to the covered premises as a prerequisite of coverage." *B. St. Grill & Bar LLC*, 525 F. Supp. 3d at 1015.

### 1. Income Support Property Provision

First is the Income Support Property policy coverage, which was part of the 2019-2020 policy. Squire avers, and emphasized at oral argument, that it purchased this coverage to mitigate financial risks associated with previous budget-related Grand Canyon National Park closures.[2] Most recently was the December 2018 "closure" due to the partial government shutdown.[3] According to Squire, the Income Support Property coverage provides relief when the Grand Canyon—an "income support property"—ceases operations for any reason. But that is not what the policy term says.

The Income Support Property coverage provision states:
> We will pay the actual loss of business income you sustain resulting for a reduction in your **operations** at the locations described in the declarations of this policy due to *direct physical loss at the premises of an* **income support property** not described in the declarations caused by or resulting from any **covered cause of loss**.

(Doc. 1-4 at 117, italic and underline added; bolded terms in original.) Squire did not allege "direct physical loss at the premises of" the Grand Canyon or other nearby attractions. (*See* Doc. 23.) Accordingly, Squire cannot recover under this provision.

Squire heavily emphasizes its reasons why it believes that it has stated a claim to recover under the income support property coverage. (Doc. 32 at 10–12.) But those reasons are unpersuasive. First, its argument that the National Park Service's order closing the Grand Canyon constitutes a physical loss is belied by the policy language itself. A governmental order shutting down an attraction might prevent patrons from visiting and spending money on nearby hotels and restaurants. But the order in and of itself does not

---

[2] When comparing the language of the income support property provision with Squire's explanation of what it asked for, one might conclude it was given an off-the-rack policy as opposed to the tailor-made policy that it expected.
[3] Press Release, National Park Service, Grand Canyon Park Accessible to Public during Partial Government Shutdown (December 22, 2018) (available at https://www.nps.gov/grca/learn/news/grand-canyon-np-accessible-to-public-during-partial-government-shutdown-2018-12-22.htm (last accessed April 25, 2022)).

- 5 -

physically alter the property. Second, Squire's attempts to distinguish the prior COVID-19-coverage cases because, here, "[t]he applicable coverage does not even include the phrase 'to property,' much less tie coverage to it." (Doc. 32 at 12.) This argument is based on a flawed reading of the policy language. In fact, the policy language ties "direct physical loss" to the "income support property." So, the policy does in fact "tie" coverage to property. And as discussed above, Squire has not alleged facts showing a direct physical loss at the Grand Canyon or associated properties, so it has not stated a claim for relief.

### 2. Business Income Provision

The parties also dispute the applicability of the business income, extended business income, and extra expense coverage provision. Like the income support property coverage, these terms require "direct physical loss or damage to the property."[4] (Doc. 1-4 at 79–80, 341, 354.) Additionally, the extra expense coverage provision specifies that coverage exists for "necessary expenses you incur during the **period of restoration**" for the insured's premises. (*Id.* at 79.)

Again, this explicit provision language—"direct physical loss or damage to the property"—contemplates physical damage, degradation, or destruction of the income support property. Squire alleges that COVID-19 causes "physical loss" by rendering the property "dangerous, unfit for its intended use, and incapable of producing income" through "physical contamination." (Doc. 32 at 14.)  But physical loss is some "distinct, demonstrable, physical alteration of the property." *Mudpie, Inc.*, 15 F.4th at 891 (cleaned up); *see also B Street Grill and Bar*, 525 F. Supp. 3d at 1016 (describing a 2021 Maricopa County Superior Court case which determined contamination was not property damage). Even construing Squire's allegations as true, as the Court must, Squire has failed to allege any actual physical damage to its property.

### 3. Mortality and Disease Exclusions

Squire makes two arguments as to the policy's mortality and disease exclusions: (1)

---

[4] The 2019–2020 business income coverage provision is slightly different, requiring "direct physical loss *of* or damage to the property." (Doc. 1-4 at 79 (emphasis added).) That is, other provisions within the same policy and in the renewed 2020–2021 policy omit the word "of." The Court finds this distinction immaterial.

the "concurrent causation" rule bars application of the exclusion in the 2019–2020 policy; and (2) the virus exclusion, added to the 2020–2021 policy, was "contrary to Squire's reasonable expectations of coverage." (Doc. 32 at 16–17.)

Squire points out that the 2019–2020 policy does not exclude coverage for losses caused by viruses. (Doc. 32 at 16.) But the policy unambiguously excludes coverage for disease, and Squire concedes that "COVID-19 is a disease." (*Id.*) Squire goes on to invoke the "concurrent causation" rule to argue that its losses should be covered because "there were other contributing and concurrent causes [to its loss], including governmental orders that resulted in the [Grand Canyon's] closure[.]" (Doc. 32 at 17.) Thus, Squire argues, that "it was efforts to prevent the spread of COVID-19—not COVID-19 itself—that resulted in the physical shutdown of the [Grand Canyon] and the hotel's resulting loss of business income." (*Id.* at 16.)

Squire identifies efforts to prevent the spread of COVID-19 as the main source of its injuries. (*Id.*) These injuries are inexorably tied to the COVID-19 disease itself, which Squire concedes is a covered exclusion. (*Id.* at 16.) The Court holds that because the causal chain between COVID-19 and Squire's alleged business losses is not debatable, the 2019–2020 policy exclusions apply. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 321 (7th Cir. 2021) ("The causal relationship between the novel coronavirus, the COVID-19 pandemic, the government orders, and the alleged losses and expenses 'is not debatable.') (quoting *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 894 (9th Cir. 2021)).

Next, Squire argues Fireman's Fund "surreptitiously added" a "virus" exclusion to the 2020–2021 policy, and this exclusion expansion "does not apply." (*Id.* at 17.) Squire argues that the expanded exclusion was given without the required notice and contrary to Squire's reasonable expectation of coverage. (*Id.* at 18.) First, it stretches the bounds of reason to believe that, in the 2019–2020 policy, Squire agreed to a disease exclusion but had a reasonable expectation of virus coverage. Second, under Arizona law, a policyholder states a claim under the "reasonable expectations" doctrine only when the policy language

is unclear, ambiguous, and objectively unreasonable; the exclusion is lengthy, confusing, complex, or buried in the policy. *Am. Family Mut. Ins. Co. v. White*, 204 Ariz. 500, 507, ¶ 19 (App. 2003). Squire has not alleged facts showing any lack of clarity, ambiguity, or unreasonableness, nor overlength, complexity, or that it was confusing or buried. (*See* Doc. 23.) Thus, to the extent that Squire's alleged claims arise under this doctrine, they fail.

### 4.     Civil Authority

Squire alleges that Fireman's Fund "[p]olicies' civil authority provisions cover all or some of Squire's business interruption and extra expense losses related to COVID-19." (Doc. 23 at ¶ 95.) But to trigger coverage under the civil authority policy provision, a loss must "[a]rise from direct physical loss or damage to property other than at such location[.]" (Doc. 1-4 at 353.) Squire alleges that the orders of civil authority resulted in the "closure of non-essential businesses" and "at least $16 Million dollars of business interruption and extra expense losses." (Doc. 23 ¶¶ 86, 9.) But Squire fails to allege any direct physical losses to the Grand Canyon or other associated properties, and as such, Squire's claims for civil authority coverage are dismissed. *B St. Grill & Bar LLC v. Cincinnati Ins. Co.*, 525 F. Supp. 3d at 1016–17 (dismissing a claim for civil authority coverage because the plaintiffs failed to allege any damage to property).

### 5.     Covered Cause of Loss

The parties also dispute which form defines the covered cause of loss for the income support property policy. Squire asserts the "special causes of loss form," which contains a specific "time element" coverage, applies to the income support property policy. (Doc. 41 at 2.) Fireman's Fund asserts that the income support provision "was incorporated into the Business Income Coverage Form" without the special cause of loss form notation, which indicates it is defined by the "basic form." (Doc. 42 at 3.)

The Court holds, regardless of which form defines the covered causes of loss here, Squire still fails to state a claim for relief. Even under the special cause of loss form, "covered causes of loss means the Basic Causes of Loss and Risks of Direct Physical Loss not covered by the Basic Causes of Loss unless loss is excluded or limited . . . ." (Doc. 1-

4 at 73.) As explained above, Squire's allegations do not state a "direct physical loss," so application of the special cause of loss form does not cure the deficiencies in Squire's claims.

### B.     Bad Faith

Squire asserts a bad faith claim based on Fireman's Fund allegedly unreasonable "failure to evaluate Squire's reasonable expectation of coverage when denying its claim." (Doc. 32 at 18–19.)  Essentially, Squire asserts that before denying its claim, Fireman's Fund should have investigated its own expectations of coverage, and the fact that Fireman's Fund did not gives rise to a bad faith claim. (*See id.*; *see also* Doc. 23 at ¶¶ 130–135.) To support this claim, Squire cites *Rawlings v. Apodaca*, 151 Ariz. 149, 154 (1986), for the proposition that bad faith liability may exist in the absence of coverage, and *Zilisch v. State Farm Mutual Auto. Ins. Co.*, 196 Ariz. 234, 237–38 (2000), for the "basic rules" of bad faith liability in Arizona, which include process a claim fairly and in good faith and extending reasonably care. While these propositions hold true, Squire presents no law that imposes an affirmative duty on an insurer to investigate its clients' belief about its scope of coverage before denying a claim. Through this argument, Squire once again invokes the reasonable expectations doctrine. But "the reasonable expectations doctrine 'must be limited by something more than the fervent hope usually engendered by loss.'" *Gregorio v. GEICO Gen. Ins. Co.*, 815 F. Supp. 2d 1097, 1102 (D. Ariz. 2011) (quoting *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 390 (1984)).

To state a claim of bad faith, the insured must show "the absence of a reasonable basis for denying benefits and then demonstrate that the insurance company either knew or recklessly disregarded the fact that it did not have a reasonable basis for denying benefits." *Id.* at 1107. Even taking Squire's allegations as true, as explained herein, Fireman's Fund did not lack a reasonable basis for denying benefits because Squire did not suffer any physical damage to its property, so Squire's bad faith claim fails on the first prong. Squire also argues that only the 2019–2020 policy applies to its losses. (Doc. 32 at 19.) The Court finds that this distinction is immaterial to Squire's failure to state a bad faith claim.

- 9 -

## IV. CONCLUSION

For the foregoing reasons, the Court grants Fireman's Fund Motion to Dismiss (Doc. 26) and dismisses Squire's First Amended Complaint (Doc. 23). Because the Court finds that it would not be possible for Squire to cure the Complaint through the additional amendment to its complaint, the Court will dismiss Squire's claims with prejudice.

Accordingly,

**IT IS ORDERED** granting Defendant Fireman's Fund Insurance Company Motion to Dismiss (Doc. 26) and dismissing Plaintiff Squire Motor Inns' claims with prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment and terminate this case.

Dated this 2nd day of May, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge